IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-01196-MSK

MARLA VALLEJO,

    Plaintiff,

v.

NANCY A. BERRYHILL, acting Commissioner of Social Security,

    Defendant.

___

**OPINION AND ORDER REVERSING DENIAL AND AWARDING BENEFITS**
___

**THIS MATTER** comes before the Court pursuant to the Court of Appeals' Order **(# 41)** directing this Court "address [Ms.] Vallejo's remaining arguments and determine if the Commissioner applied the correct legal standards and if substantial evidence in the administrative record . . . supports the Commissioner's final decision." In doing so, the Court has once again considered the Administrative Record **(# 11)** and the parties' briefs **(# 14, 15, 16)**.

## The Agency Proceedings

Ms. Vallejo applied for Social Security Disability Insurance benefits in 2010. When her claim proceeded to adjudication by an ALJ, the evidence in the record consisted of the testimony of Ms. Vallejo, plus the opinions of a consulting physician, a state-agency physician, an examining psychologist, and a state-agency psychologist; Ms. Vallejo did not offer any evidence from a treating physician at that time. On March 29, 2012, the ALJ denied her application for benefits.

Thus, the Court finds that the record reflects as follows. At the time of Ms. Vallejo's application, she was 38 years old, with an 11th grade education and no past relevant work experience. She suffers from a variety of physical impairments, including pain in the left tibia and right ankle, along with a deformity of her right clavicle. But her primary limitations arise from mental impairments, including a mood disorder, bipolar disorder, and personality disorder. From 2009 to 2011, she received intermittent mental health treatment from Dr. McNabb, along with prescriptions for Effexor and Depakote.

In 2009, Ms. Vallejo underwent a psychiatric consultation with Dr. Madsen. He diagnosed her with Bipolar Disorder and impaired intellectual functioning. He assigned her a GAF score of 50-55, demonstrating moderate impairment. He concluded that "her ability to do work-related activities continue to be impaired at a marked level. She will have difficulty maintaining a regular work schedule, focusing and concentrating on work, relating to peers, coworkers, supervisors, and the general public."

In July 2010, Dr. Suyeishi, a state agency consulting psychologist, opined that Ms. Vallejo could follow simple instructions, sustain ordinary routines, and make simple work-related decisions. He further opined that she could not work closely with supervisors or coworkers, but could accept infrequent supervision or coworker interaction.

In September 2010, Dr. Summerlin conducted a consultative physical examination of Ms. Vallejo. He determined that she could currently stand and walk for periods of up to four hours, but that that limitation would lift in four to six months as she healed from recent injuries. He concluded that she had no limitations in lifting, carrying, sitting, or manipulating objects. Similarly, that same month, Dr. LoGalbo, a state agency reviewing physician, also opined that

Ms. Vallejo could lift and carry 25 lbs. frequently and 50 lbs. occasionally, could sit for 6 hours per day, and stand or walk for 4 hours per day.

Ms. Vallejo testified that she can sit for one hour before needing to stand and move around, and that she can stand for an hour before needing to sit back down.  She testified that she can lift five pounds, that she has difficulty sleeping, that she spends most of her time watching TV or talking on the phone with friends.  Occasionally, she cooks, accompanies her mother on shopping trips, goes to church, plays bingo, or goes for a walk.

Based on this evidence, The ALJ concluded that Ms. Vallejo could perform unskilled work, with minimal contact with coworkers and the public, sitting for up to six hours per day and standing or walking for up to four hours per day.  Based on these limitations, the ALJ determined that Ms. Vallejo could perform the work of a silverware wrapper, a retail marker, or possibly a housekeeper.  The ALJ inquired of a vocational expert whether that same work would be available with the additional limitation that Ms. Vallejo could not sustain concentration, persistence, and pace for a 40-hour workweek, to which the vocational expert answered that no meaningful work would be available to Ms. Vallejo with that further limitation.

Ms. Vallejo appealed the ALJ's decision to the Appeals Council.  Along with that appeal, she also submitted a Residual Functional Capacity Evaluation ("RFC") from Dr. Jerald Ratner, her treating physician from 2011 to 2012.  Dr. Ratner opined that Ms. Vallejo suffered from Bipolar Disorder, that she had no limitations in her ability to carry out very short and simple instructions, but that she had moderate limitations in her ability to remember work-like procedures and extreme limitations in her ability to maintain attention and concentration, to keep a schedule and maintain attendance, to work with others without distraction, and to maintain a workday without interruption and work at a consistent pace.  He also opined that Ms. Vallejo had

extreme limitations in dealing with the public or coworkers and with accepting instructions and supervision, but only slight limitations in the ability to ask questions and request assistance. Finally, he opined that she was incapable of attending to full-time work and stated that she would be off-task for 100% of the work week. Armed with Dr. Ratner's new RFC opinion, Ms. Vallejo sought review of the ALJ's decision by the Appeals Council.

On March 8, 2013, the Appeals Council denied her request for review. In a form order, it stated "We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." The form also contained an indication of any additional evidence that it had considered (beyond the record before the ALJ), and the Appeals Council indicated that it had reviewed Dr. Ratner's RFC. Thus, Dr. Ratner's opinion became part of the record.

### Court proceedings

Ms. Vallejo then commenced the instant appeal. After reviewing the briefs and record and hearing oral argument on July 23, 2014, this Court reversed the Commissioner's decision and remanded the matter to the Commissioner for further proceedings. The Court explained that "the dispositive issue here is whether there was error by the Appeals Council in not properly articulating its assessment of an opinion . . . by a treating physician [ ] that was submitted post-hearing." The Court found that the Appeals Council's failure to articulate any reasons for rejecting Dr. Ratner's RFC violated the requirements of *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003), that require an explanation for the rejection of a treating physician's opinion.

The Commissioner appealed this Court's decision to the Court of Appeals. The Court of Appeals reversed, finding that under *Martinez v. Barnhart*, 444 F.3d 1201 (10th Cir. 2006), the Appeals Council is not required to offer anything more than a conclusory statement about the

evidence it has considered. The Court of Appeals remanded the case, instructing this Court to "determine if the Commissioner applied the correct legal standards and if substantial evidence in the administrative record – which now includes Ratner's opinion – supports the Commissioner's final decision."

## ANALYSIS

### A. The Procedural Conundrum

This Court has scrutinized the 10th Circuit's decision and find that it creates a seemingly-inescapable procedural thicket. Nearly every conceivable approach for carrying out the terms of the 10th Circuit's remand leads to the same conclusion – that the Commissioner's decision is insufficient – yet the procedural mechanisms for accomplishing the apparently-inevitable outcome are often foreclosed, explicitly or implicitly, by the 10th Circuit's findings and conclusions.

The Court begins with the fact that Dr. Ratner's RFC opinion is now a part of the agency's record. That fact is established both in the Appeals Council's decision and in the instructions from the 10th Circuit. 849 F.3d at 956 ("the administrative record [ ] which now includes Ratner's opinion"). And because Dr. Ratner is a treating physician of Ms. Vallejo, the Commissioner is required to make specific factual findings that address the "the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 955 & n.2, *citing* 20 C.F.R. § 416.927(c)(2) *and Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The failure of the factfinder to explain the weight given to the treating physician's opinion is an error of law requiring remand. *Watkins*, 350 F.3d at 1301.

Here, the ALJ offered no explanation of the weight given to Dr. Ratner's opinion because, quite obviously, that opinion was not yet in the record. The Appeals Council offered no

explanation of the weight given to Dr. Ratner's opinion, but the 10th Circuit's opinion here makes clear that it is not required to do so. 849 F.3d at 955 (acknowledging the "tension" between the requirement of express findings regarding treating physician opinions and the Appeals Council's right to offer only conclusory rejections, but deferring to the latter). Because the Appeals Council denied review, the ALJ's ruling has thus become the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107. Therefore, because neither the ALJ nor the Appeals Council ever made the necessary findings regarding the weight to be given to Dr. Ratner's RFC opinion, the final decision of the Commissioner is infected by a legal error that requires remand.

But the 10th Circuit's decision seems to foreclose the possibility of this Court simply remanding the matter to the Commissioner for further consideration. Ms. Vallejo expressly argued to the 10th Circuit that, notwithstanding any error in this Court requiring an explanation from the Appeals Council, a remand to the Commissioner was inevitably going to be the necessary remedy. *Id.* at 956. The 10th Circuit disagreed, explaining that "*Martinez* precludes this argument"[1] and stated that "the district court's only option was to conduct a substantial-evidence review by assessing the entire agency record, including Ratner's never-before assessed opinion." *Id.* But again, because the law requires the agency factfinder to expressly address the weight to be given to a treating physician's opinion. The ALJ's (and thus, the Commissioner's) decision does not do so, and thus, the decision is inherently defective and incapable of surviving

---

[1] In doing so, the 10th Circuit appears to have mistakenly assumed that Ms. Vallejo was arguing for "remanding the case to the Appeals Council," and rejected that notion because, as it clearly concluded, the Appeals Council is not required to offer any explanation for its findings when denying review. *Id.* But this Court never suggested that the case be remanded to the Appeals Council for further factfinding; rather, this Court's prior remand simply dispatched the case back to the Commissioner for further proceedings. The Commissioner could have – and indeed should have – returned the case to the ALJ in the first instance to consider what weight should be given to Dr. Ratner's new opinion.

a substantial evidence review. Reversal of the Commissioner's decision and a remand for further factfinding is the only remedy that could possibly result. It is difficult to imagine that the 10th Circuit would remand the matter to this Court simply so that the Court could conduct an assessment whose outcome was obvious and inevitable, but that appears to be what has happened.

Alternatively, one might read the 10th Circuit as instructing this Court to simply overlook the absence of any factfinding as to the weight to be given to Dr. Ratner's RFC. After all, if the Appeals Council's silence on the issue (alongside that of the ALJ) does not compel a remand back to the Commissioner, perhaps the Court must simply ignore that defect. But that approach has its own flaws: the fact remains that <u>some</u> evaluation of the treating physician's opinion is required by law. 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion"). If <u>someone</u> must explain the weight to be given to Dr. Ratner's opinion, and that burden does not fall upon the ALJ or the Appeals Council, perhaps the 10th Circuit intended for <u>this Court</u> to weigh Dr. Ratner's opinion. But to do so would be to contravene the directions of the 10th Circuit in *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993), that the Court is not to weigh the evidence itself or substitute its discretion for that of the Commissioner.

Thus, it appears to the Court that by accepting Dr. Ratner's opinion into the record but refusing to weigh it, the Commissioner has made a decision that has an inherently fatal defect. Yet this Court's reading of the 10th Circuit's decision in this and other cases leaves the Court with no clear procedural mechanism to carry out a review of that decision that can be in any way meaningful. Fortunately, for the reasons discussed below, the Court has found that there is one –

and perhaps only one – possible way out of this situation, and the Court proceeds to explain that reasoning below.

**B. Carrying out the remand**

The 10th Circuit's remand directed this Court to carry out three instructions: (i) "to address [Ms.] Vallejo's remaining arguments"; (ii) to "determine if the Commissioner applied the correct legal standards"; and (iii) to determine "if substantial evidence in the administrative record . . . supports the Commissioner's final decision." Although the outcome of the latter two inquiries appears to be a foregone conclusion, the Court will approach these tasks in the order they are listed.

1. <u>Ms. Vallejo's remaining arguments</u>

Ms. Vallejo's initial merits brief raised five arguments: (i) although crediting Dr. Suyieshi's opinions, the ALJ failed to account for the fact that Dr. Suyieshi opined that Ms. Vallejo could not have frequent or prolonged interaction with co-workers or supervisors and mistakenly converted that opinion into a finding that Ms. Vallejo could not work "as part of a team"; (ii) that new evidence was submitted to the Appeals Council but not properly evaluated (an argument that both this Court and the 10th Circuit have now addressed); (iii) the ALJ improperly reduced the weight given to Dr. Madsen's opinion, particularly insofar as that opinion is consistent with Dr. Ratner's opinion; (iv) the ALJ made an improper credibility finding by failing to identify which parts of Ms. Vallejo's testimony about her limitations were credible and which were not; and (v) the ALJ improperly gave weight to the opinions of Dr. Suyieshi – a non-examining expert – over that given to the opinions of Dr. Madsen – an examining expert. The Court need not reach argument (ii), which has already been addressed, and argument (iii), which requires an assessment and weighing of Dr. Ratner's opinion – an

assessment and weighing that does not exist in the record. Excluding those, the Court will briefly address Ms. Vallejo's remaining arguments.

As to the argument that the ALJ improperly converted Dr. Suyieshi's opinions as to Ms. Vallejo's function limitations into different limitations, the record reflects that Dr. Suyieshi opined that Ms. Vallejo "cannot work closely with supervisors or coworkers; can accept supervision and relate to coworkers if contact is not frequent or prolonged." At the hearing, the ALJ inquired of the vocational expert about jobs that were "not in close proximity to coworkers, meaning the individual could not function as a member of a team, and only occasional direct contact with the public." The ALJ's decision reflects those same findings as to Ms. Vallejo's social limitations. The Court cannot say that the ALJ's reference to Ms. Vallejo "not [working] in close proximity to coworkers" is meaningfully different from Dr. Suyieshi's finding that she "cannot work closely with . . . coworkers." The ALJ appended the limitation that Ms. Vallejo "could not function as a member of a team," but the Court does not understand that statement to alter or negate the prior finding that Ms. Vallejo had to have some separation (presumably at all times) from co-workers. Rather, the ALJ's reference to working as a team was merely supplementing to "no work with co-workers" with an additional observation: that such a limitation would also preclude any work requiring team efforts. Accordingly, the Court cannot say that the ALJ erred in presenting the contents of Dr. Suyieshi's opinions (that the ALJ had adopted) to the vocational expert.

As to Ms. Vallejo's argument that the ALJ made improper credibility findings, the Court discerns her to complain that the ALJ found her self-reported limitations to be "[ ]not . . . entirely credible," but that the ALJ did not proceed to state which limitations were credibly reported and which were not. Ms. Vallejo does not cite to authority for the proposition that the ALJ is

required to specifically articulate which particular self-stated limitations are found to be credible and which are not, and the Court is not aware of any such requirement. Credibility findings are particularly the province of the factfinder and will not be disturbed if supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ must closely and affirmatively link the credibility findings to evidence in the record, and is required to do more than "simply recite the general factors considered," but is not required to adhere to any specific format in doing so. *Paulsen v. Colvin*, 665 Fed.Appx. 660, 663 (10th Cir. 2016). Here, the ALJ's credibility findings simply recited certain limitations Ms. Vallejo claimed (that "she could not sit, stand or walk for more than one hour or lift more than five pounds, and that she could not socialize with others"), then stated that "the evidence does not correlate with this degree of disability." If this were the only analysis the ALJ engaged in, the Court might agree with Ms. Vallejo. But at other points in the decision, the ALJ explains that Ms. Vallejo's self-reported limitations were inconsistent with specific items of evidence in the record. For example, although Ms. Vallejo reported that she did not socialize, the ALJ noted that she "testified that she. . . talks on the phone, attends BINGO rarely, and goes to the park with friends." Thus, the Court finds that the ALJ's rejection of some of Ms. Vallejo's self-professed limitations, such as her inability to socialize, is neither insufficiently explained nor inconsistent with the evidence in the record.

Finally, Ms. Vallejo argues that the ALJ improperly weighted Dr. Suyieshi's opinion over that of Dr. Madsen's, even though Dr. Madsen was an examining physician and Dr.Suyieshi was only a consulting (*i.e.* non-examining) one. The Court need not belabor the analysis of this argument. The ALJ gave Dr. Suyieshi's opinions greater weight than Dr. Madsen's because the ALJ found that Dr. Madsen's opinions were not as consistent with the record as Dr. Suyieshi's.

Although Dr. Madsen's records indicated that Ms. Vallejo presented particularly poorly on the one visit she had with Dr. Madsen – with poor grooming and hygiene and impaired intellectual functioning -- the remainder of her medical records with treating providers did not identify any such issues. For example, in several of Dr. McNabb's treatment notes, he indicates that Ms. Vallejo was "dressed . . . appropriately and has good personal hygiene," and that her orientation, memory, thought processes, judgment, and insight were all acceptable. This is sufficiently substantial evidence to allow the ALJ to conclude that Dr. Madsen's experience with Ms. Vallejo was unusual, and that Dr. Suyieshi's opinions, derived from a broader cross-section of treatment records, was more persuasive, even though Dr. Suyieshi did not actually examine Ms. Vallejo.

Thus, the Court finds nothing in Ms. Vallejo's remaining arguments that would require reversal.

### 2. Application of correct legal standard

Next, the 10th Circuit instructed this Court to determine if the Commissioner – that is, for purposes here, the ALJ – applied the correct legal standard. As noted above, this Court must conclude that the ALJ did not. Although the reasons why are understandable, the fact remains that the ALJ never evaluated Dr. Ratner's opinion according to the standards applicable to treating physicians' opinions. The ALJ is required to give the treating physician's opinion "controlling weight" if the ALJ determines that the opinion is supported by medical evidence and not inconsistent with other substantial evidence in the record. And if the ALJ chooses not to give the opinion controlling weight, the ALJ must expressly state how much weight it is being given and what specific factors account for that weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The failure of the ALJ to perform these two steps requires a remand. *Id.*

Thus, because the ALJ (and thus, the Commissioner) never evaluated Dr. Ratner's RFC opinion according to the necessary standards, the ALJ's determination must be reversed.

### 3. Substantial evidence

For essentially the same reasons discussed above, the failure of the ALJ to assess Dr. Ratner's opinion prevents the Court from finding that the ALJ's determination is supported by substantial evidence. Because that opinion was never tendered to the ALJ, it is axiomatic that the ALJ did not consider it in relation to the rest of the record. The ALJ "may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264,1265 (10th Cir. 2008). Yet, by not considering the effect of Dr. Ratner's opinion in the record, this is precisely what the ALJ did here. For this reason as well, reversal of the ALJ's determination is required.

### C. Remedy

As discussed above, the Court has some doubt as to whether the 10th Circuit's reasoning in this case authorizes the Court to remand the matter to the Commissioner for further consideration. Fortunately, however, such a remand is unnecessary, as the Court finds that on the current record – including Dr. Ratner's opinion – there is no possible outcome in this case other than the award of benefits to Ms. Vallejo.

When faced with deficient findings of fact by the Commissioner, the Court has the option to either remand the matter for additional factfidning or to simply direct an award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding how to exercise that discretion, the Court should consider the length of time the matter has been pending and whether, given the available evidence, a remand for further factfinding would serve any useful purpose or whether it would simply delay the receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626

(10th Cir. 2006). The Court should not direct an award of benefits unless the administrative record has been fully developed and substantial and uncontradicted evidence in the record indicates that the claimant is entitled to benefits. *Brockway v. Astrue*, 781 F.Supp.2d 1145, 1154 (D. Colo. 2011).

Here, the Court begins, as would the ALJ upon remand, with Dr. Ratner's RFC opinion. Because Dr. Ratner is a treating physician, his opinion must be given controlling weight unless it is inconsistent with substantial evidence in the record. In this regard, the Court focuses on the two particular limitations that the ALJ identified that caused the vocational expert to change her opinion as to whether work existed that Ms. Vallejo could perform: that Ms. Vallejo would be "unable to sustain concentration, persistence, and pace necessary to consistently fulfill work for eight hours a day, five days a week," and that she "would unexpectedly miss work for more than four days a month." Dr. Ratner opines as to both of these limitations, noting that Ms. Vallejo demonstrates "extreme" limitations in "the ability to complete a normal workday and workweek without interruptions" and to "perform at a consistent pace without an unreasonable number or length of rest periods." He opines that she would be "off-task" 100% of the time in a given workday.

Although the Court does not engage in factfinding, it notes that a conclusion that Dr. Ratner's opinion was consistent with the record would be supported by substantial evidence. Records from Ms. Vallejo's treatment with Dr. McNabb indicated that Ms. Vallejo failed to keep to a treatment schedule, often missing treatment appointments without explanation. Thus, a conclusion that Ms. Vallejo could not maintain regular attendance at a job would be entirely consistent with the evidence that she could not maintain regular attendance at treatment. Dr. Ratner's opinion is also consistent with that of Dr. Madsen, at least as it relates to the question of

attendance, as Dr. Madsen similarly opined that Ms. Vallejo "will have difficulty maintaining a regular work schedule [and] focusing and concentrating on work."

The only evidence in the record that could possibly conflict with Dr. Ratner's conclusions on these two points would be that of Dr. Suyeishi, the only remaining provider addressing Ms. Vallejo's mental limitations. Dr. Suyeishi opined that Ms. Vallejo was "moderately limited" in "the ability to . . . maintain regular attendance" and in "the ability to sustain an ordinary routine without special supervision." He concluded that Ms. Vallejo's "[s]ymptoms may interfere with completion of a normal workday or workweek or may cause inconsistent pace," a finding that is consistent with Dr. Ratner and Dr. Madsen's opinions. However, Dr. Suyeishi goes on to state that "when work does not require more than simple instructions, ordinary routines and simple work decision making, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduced pace."

It is not clear how Dr. Suyeishi reached that conclusion.[2] Dr. Suyieshi did not examine Ms. Vallejo; he formulated his opinions by reviewing Ms. Vallejo's records from her mental health provider (Spanish Peaks) and Dr. Madsen's consulting examination report. This Court cannot locate anything in either of those sources that would justify a conclusion that "simple instructions [and] ordinary routines" would be something that Ms. Vallejo could reliably carry out. Once again, the only factual evidence in the record that bears on Ms. Vallejo's ability to maintain regular attendance is her checkered attendance records at treatment appointments with Dr. McNabb, evidence that cuts against, rather than supports, Dr. Suyeishi's opinion. The Court sees nothing in the record that would support a conclusion that Ms. Vallejo could maintain

---

[2] Dr. Suyeishi acknowledges that his opinion finds Ms. Vallejo's capabilities to be greater than Dr. Madsen did, but he explains that disparity simply by announcing that Dr. Madsen's opinion "is an underestimate . . . based only on a snapshot of [Ms. Vallejo's] functioning." Dr. Suyieshi does not go on to point to any particular evidence that actually supports his own, broader assessment.

concentration and focus over an entire day (much less day-to-day) on simple tasks. Even Dr. Suyieshi appears to agree with Dr. Madsen and Dr. Ratner that more complex tasks are beyond Ms. Vallejo's ken, but it is unclear what simple tasks Dr. Suyieshi viewed Ms. Vallejo repeatedly performing in the record that could lead him to the conclusion that simplicity would translate into full-day concentration.

Thus, even if the Court were to remand the matter for further factfinding by the ALJ, it is apparent that the ALJ could not possibly conclude that Dr. Suyieshi's opinion is supported by substantial evidence in the record. Unable to rely on Dr. Suyieshi's opinion, the ALJ would not be able to overcome the presumption that Dr. Ratner's FRC opinion was controlling, particularly where that opinion was supported by Dr. Madsen's findings as well. There is no indication in the record that there is additional evidence that is available but not yet secured. In such circumstances, a remand is unnecessary: the only possible conclusion that the ALJ could reach is that Mr. Vallejo suffers from limitations that affect her ability to maintain regular attendance and full-day concentration, and the vocational expert confirmed that those limitations would preclude her from engaging in any meaningful work.

Thus, Ms. Vallejo is entitled to an award of benefits.

## **CONCLUSION**

For the foregoing reasons, the Court **REVERSES** the Commissioner's determination and, finding that the record demonstrates that Ms. Vallejo cannot engage in gainful employment,

**DIRECTS** that she be found eligible for benefits. The Clerk of the Court shall enter judgment in accordance with this determination.

Dated this 19th day of October, 2017.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge